IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENDA MICHELLE HICKS,                    No.  6:13-cv-02179-HZ

               Plaintiff,                    OPINION & ORDER

    v.

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration,

               Defendant.


Drew L. Johnson
170 Valley River Drive
Eugene, OR 97401

John E. Haapala, Jr.
410 E. 10th Ave. Ste. 240
Eugene, OR 97401

       Attorneys for Plaintiff

S. Amanda Marshall
U.S. Attorney's Office
District of Oregon


1 - OPINION & ORDER

1000 SW Third Avenue, Suite 600
Portland, OR 97204

Kathryn A. Miller
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Brenda Hicks ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

BACKGROUND

     Born in July, 1968, plaintiff was 36 years old on her alleged onset date. Tr. 67. She left school in the 9th grade and completed her GED in 1994. Tr. 187, 354. She has past work experience as a care provider, window manufacturer, chicken packager, and electronic assembly worker. Tr. 187. Plaintiff alleges disability as of September 1, 2004, due to anxiety, panic disorder, and rheumatoid arthritis. Tr. 67, 186.

     The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ") on April 19, 2012. Tr. 113, 118, 122. After an administrative hearing, held on July 18, 2013, ALJ John Michaelson issued a decision denying plaintiff's claims. Tr. 10-23, 29. The Appeals Council denied

plaintiff's subsequent request for review on October 11, 2013, making the ALJ's decision the final Agency decision. Tr. 1; 20 C.F.R. § 422.210 (2014). This appeal followed.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir.1999); 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since her application date of May 26, 2011.  Tr. 12.  At step two, the ALJ found plaintiff had the following severe impairments: history of alcohol abuse, rheumatoid arthritis, panic disorder, depression, and anxiety.  Id.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. Id.

The ALJ next assessed plaintiff's RFC and determined that plaintiff retained the ability to perform light work with the following limitations: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for 6 hours and sit for 6 hours in an 8 hour work day; she can occasionally kneel and frequently grasp, finger, and handle bilaterally; she should avoid all crawling and climbing of ladders, ropes, and scaffolds; she should avoid concentrated exposure to moving machinery, heights, and similar hazards; she can perform simple, repetitive, routine tasks that require no more than occasional interaction with the general public.  Tr. 14.  At step four, the ALJ found that plaintiff has no past relevant work.  Tr. 21.  At step five, the ALJ concluded that plaintiff could perform jobs that exist in significant numbers in the national

economy, including office helper, mail clerk, and security guard.  Tr. 22.  Accordingly, the ALJ
found that plaintiff was not disabled.  Id.

STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner
applied proper legal standards and the findings are supported by substantial evidence in the
record.  42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th
Cir. 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a
preponderance."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)
(quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  It is "such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion."  Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion.
Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d
715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the
Commissioner.  Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see
also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the
evidence are insignificant if the Commissioner's interpretation is rational.  Id.; see also Batson,
359 F.3d at 1193.  However, this Court cannot now rely upon reasoning the ALJ did not assert in
affirming the ALJ's findings.  Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S.
194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical record; (2)
rejecting her subjective symptom testimony; (3) rejecting the lay opinion evidence; and (4)

improperly relying upon the VE testimony. For the reasons discussed below, the ALJ's decision is affirmed.

I.      The ALJ's Evaluation of the Medical Evidence

Plaintiff first argues that the ALJ failed to properly evaluate the medical evidence.  The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons.  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).   In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion.  Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency

with a claimant's testimony, and inconsistency with a claimant's daily activities.  Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

    1.  Examining Psychiatrists Sharon Beickel and Kris Hallenburg

    Plaintiff argues that the ALJ improperly rejected the opinion of examining psychiatrists Sharon Beickel, Ph.D., and Kris Hallenburg, Ph.D.  Pl.'s Br. 14.  Drs. Hallenburg and Bickel both opined that plaintiff was precluded from engaging in substantial gainful activity due to her physical and mental impairments.  On September 23, 2009, Dr. Hallenburg wrote that plaintiff's "psychological conditions would significantly interfere" with her ability to interact with coworkers, the public, and supervisors.  Tr. 355.  She opined that plaintiff's anxiety, lack of motivation, and poor social skills would keep her from working most jobs.  Id.  Similarly, Dr. Beickel opined in June, 2008 that plaintiff would have "a great deal of difficulty sustaining appropriate social interaction" because "she is extremely shy and mute at times."  She stated that plaintiff would have problems with persistence due to pain.  Tr. 280.

    The ALJ gave limited weight to the opinions of Drs. Beickel and Hallenburg.  Tr. 21. Instead, the ALJ credited the medical opinions of examining physician DeWayde Perry, M.D., examining psychologist Paula Belcher, Ph.D.  Id.  The opinions of these practitioners contradicted the opinions of Drs. Beickel and Hallenburg.  See Tr. 269-73.  The ALJ was therefore required to provide specific, legitimate reasons for rejecting the contradicted opinions of Drs. Beickel and Hallenburg.  Lester, 81 F.3d at 830.

    First, the ALJ noted that the opinions of Drs. Beickel and Hallenburg predated plaintiff's application and were therefore given little weight.  Tr. 21.  Medical opinions that predate the relevant period are of limited relevance.  Carmickle, 533 F.3d at 1165.  The ALJ need not discuss all evidence, but must explain only why "significant probative evidence" has been

rejected.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ explained that the opinions of Drs. Beickel and Hallenburg, dated June, 2008 and September, 2009, respectively, were rendered outside the relevant period of May 26, 2011 through August 9, 2013.  The ALJ noted that he narrowly considered the opinions in order to establish plaintiff's medically determinable impairments at step two, but relied upon the more recent medical opinions of record, which are more probative, to determine plaintiff's RFC.  Tr. 15.  The fact that Drs. Beickel and Hallenburg rendered their opinions of plaintiff before the relevant period thus supports the ALJ's evaluation of the medical evidence.  Carmickle, 533 F.3d at 1165.

Second, the severe limitations assessed by Drs. Beickel and Hallenburg were unreasonable in light of other evidence in the record.  Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999) (a physician's opinion regarding a claimant's level of impairment may be rejected because it is unreasonable in light of other evidence in the record).  Here, for example, in contrast with Drs. Beickel and Hallenburg, examining consultant Dr. Belcher opined that plaintiff suffered from some impairments but did not note any significant functional limitations.  Tr. 451, 540.  Dr. Belcher's opinion was rendered on February 15, 2012, and therefore fell within the relevant period.  Id.  Drs. Beickel and Hallenburg were therefore contradicted by more probative medical evidence in the record.  Further, the ALJ noted plaintiff's activities supported the RFC and were therefore inconsistent with Dr. Beickel's and Dr. Hallenburg's assessments.  Tr. 21.  In sum, the ALJ provided legally sufficient reasons for rejecting the opinions of Drs. Beickel and Hallenburg.  Lester, 81 F.3d at 830.

2. Treating Physician William Maier

Plaintiff also argues that the ALJ improperly rejected the opinion of treating physician William Maier.  Pl.'s Br. 17.  Rheumatologist Dr. Maier began treating plaintiff for arthritis in

2007, and continued to treat plaintiff through the date of the ALJ's decision.  Tr. 400, 465.  In

March, 2010, Dr. Maier noted synovial thickening of the joints in plaintiff's wrists, second and

third MCP joints, and in her ankles and forefoot.  Tr. 400.  He also observed "painful range of

motion of right shoulder."  Id.  In July of 2010, Dr. Maier observed "active synovitis" in

plaintiff's wrists and MCP joints, but no knee effusions.  Tr. 399.  In August, 2012, Dr. Maier

noted "marked loss of range of motion of the wrists with chronic synovial thickening, some

discomfort on range of motion … [and p]ainful range of motion of the right shoulder with right

subacronial tenderness."    Tr. 465.    He opined that plaintiff's physical condition was

progressively worsening.  Id.

The ALJ considered Dr. Maier's opinion in detail but relied more heavily upon

consultative examining physician Dr. Perry.  Tr. 16.  Dr. Perry performed three consultative

physical evaluations with plaintiff.  Tr. 17, 269, 358, 443, 447.  He assessed plaintiff's residual

functional capacity to allow frequent grasping, fingering, and handling bilaterally; and standing

and walking six hours out of an eight hour day.  Id.  In accordance with Dr. Perry's evaluation,

the ALJ found no limitations on plaintiff's ability to reach overhead.

Plaintiff contests this finding as an improper rejection of Dr. Maier's opinion.  When a

medical opinion does not prescribe any specific limitations, however, the ALJ need not assume

that the medical source intended to include any such limitations.  Turner v. Comm'r, 613 F.3d

1217, 1223 (9th Cir. 2010).  Here, the ALJ considered Dr. Maier's treatment notes in some detail

but did not adopt any specific limitations associated with Dr. Maier's opinion.  Tr. 15-16.  While

Dr. Maier assessed painful range of motion in plaintiff's right shoulder, he did not note any

limitations on reaching.  Tr. 400.  Similarly, he did not assess any standing or walking limitations

despite his notes about plaintiff's ankles and forefeet.  Tr. 400, 465.  Further, Dr. Maier's most

recent treatment note states that plaintiff had "good fist and grip," and good "range of motion of elbows" despite marked loss of range of motion in her wrists. Tr. 465. He concluded that plaintiff should be seen on an "as-needed basis" or if her symptoms worsen, and recommended only over-the-counter medication to treat her physical symptoms. On this record, the Court finds that the ALJ properly considered the medical evidence and formulated plaintiff's RFC consistent with the credible, specific limitations in the record. The ALJ did not err in his evaluation of Dr. Maier's opinion. Turner, 613 F.3d at 1223.

II.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in rejecting her subjective symptom testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. Morgan, 169 F.3d at 599.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti,

533 F.3d at 1039.  Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

At the hearing, plaintiff testified that she began to have arthritis flare-ups in September, 2004.  She testified that she has no movement in her wrists and that she gets swelling in her hands if she uses them throughout the day.  Tr. 36.  Plaintiff experiences flare-ups in her wrists about four times per month which last for a couple of days, during which time she cannot use her hands at all.  She experiences swelling in her feet and pain in her back and shoulders.  She takes ibuprofen for pain and Xanax for anxiety and panic attacks.  Tr. 36, 42.  Plaintiff alleged that she has panic attacks two to three times per week that last for half an hour to forty-five minutes on average.  Tr. 43-44.  She testified that she is unable to work primarily due to pain in her wrists, shoulder, back, and feet.  Tr. 37.

The ALJ considered plaintiff's testimony and found that it was not credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 15.  First, the ALJ found that plaintiff failed to seek appropriate treatment for the alleged severity of her rheumatoid arthritis.  Tr. 17.  A claimant's unexplained failure to seek treatment is a clear and convincing reason to reject her credibility.  Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  Here, plaintiff only sought treatment from her rheumatologist 5 times in roughly 5 years, between September, 2007 and August, 2012.  See Tr. 266, 268, 399-400, 465.  While plaintiff argues that her infrequent visits are explained by her "other physical conditions as well as a mental impairment,"

the record does not support this claim. Plaintiff does not point to evidence that would indicate ongoing inability to attend or schedule doctor's appointments; by contrast, the record shows that she was able to successfully attend other medical appointments regularly and without significant incident. On this record, plaintiff's testimony regarding the nature and severity of her arthritis pain and associated limitations was undermined by her failure to seek consistent treatment. The ALJ therefore provided a clear and convincing reason for rejecting plaintiff's subjective symptom testimony. Bruton, 268 F.3d at 828.

The ALJ also found that plaintiff's failure to seek and comply with mental health treatment recommendations undermined her credibility. Tr. 17. First, plaintiff sought minimal treatment for her psychological symptoms and reported few if any mental health symptoms to her treatment providers. This was a relevant credibility consideration. Bruton, 268 F.3d at 828. Further, plaintiff failed to comply with treatment recommendations from mental health providers. Failure to comply with a provider's treatment recommendations can support an ALJ's credibility finding. SSR 96–7p, available at 1996 WL 374186, at *7. Here, for example, plaintiff was prescribed Zoloft for her mental health symptoms, but it appears from the record that she did not take this medication. Tr. 425, 428, 460. Plaintiff also failed to comply with Dr. Brian Jones's recommendation that she decrease her alcohol intake. Tr. 428 (treatment note dated October 21, 2010, recommending that plaintiff cut back on her alcohol intake, which was noted as "five to seven drinks at a time, usually just once a week"), 444 (treatment note dated January 10, 2012, stating that plaintiff continued to consume "about six or eight beers" at a time, every week). On this record, plaintiff's failure to seek appropriate treatment for her psychological symptoms and failure to comply with treatment recommendations supports the

ALJ's credibility finding.  Bruton, 268 F.3d at 828; SSR 96–7p, available at 1996 WL 374186, at *7.

Third, the ALJ used ordinary techniques of credibility evaluation to determine plaintiff was less than fully credible.  Tr. 18.  See Tommasetti, 533 F.3d at 1039.  For example, the ALJ noted that while plaintiff reported having a panic attack during a visit with Dr. Belcher, Dr. Belcher did not observe any signs of anxiety during the alleged incident.  Tr. 450.  The ALJ properly inferred that plaintiff was less than fully credible in her presentation of her own mental health symptoms and limitations.  Tommasetti, 533 F.3d at 1039.

Fourth, the ALJ found that the level and nature of plaintiff's daily activities contradicted her testimony.  Tr. 18.  An ALJ may rely upon a claimant's activities of daily living in evaluating her credibility.  Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012).  Here, the ALJ determined that plaintiff's daily activities, which include attending her children's school programs, shopping in stores by herself, visiting with friends and family, and going to the movies and out to dinner, contradicted her allegations regarding the nature and extent of her symptoms and limitations.  Tr. 18, 40, 45.  While the evidence of plaintiff's activities is somewhat equivocal, it was proper for the ALJ to consider plaintiff's level of activity in finding her to be less than fully credible regarding her mental and physical limitations.  Molina, 674 F.3d at 1112-13.

Finally, the ALJ found that plaintiff's testimony was contradicted by the medical evidence of record.  Tr. 18-19.  Objective medical evidence is a relevant consideration regarding a claimant's credibility.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Here, plaintiff alleged significant physical limitations due to pain in her back, shoulder, wrists, and feet.  Tr. 44-45.  Dr. Perry, however, found that plaintiff was not limited in her ability to sit; that she could lift

and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday, and frequently climb, stoop, and crouch. Tr. 269-73. He also observed normal gait, normal heel and tandem walk, good grip strength and intact grasping. Id. Dr. Perry's physical findings contradict plaintiff's allegations that she is completely disabled and partially immobilized due to pain. On this record, the medical evidence provided an additional clear and convincing reason for rejecting plaintiff's testimony. Rollins, 261 F.3d at 857. In sum, the ALJ provided sufficient clear and convincing reasons for rejecting plaintiff's testimony and his credibility finding is affirmed.

III.    Lay Witness Testimony

        Plaintiff also contends that the ALJ erred because he failed to address the lay testimony of Rachel Thomas and Richard Hicks in his written decision. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. Lewis, 236 F.3d at 511. It is not, however, reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." Molina, 674 F.3d at 1122. In the Ninth Circuit, if the ALJ offers "arguably germane reasons" for dismissing "other," or lay, evidence, he need not "clearly link his determination to those reasons." Lewis, 236 F.3d at 512.

On July 17, 2013, plaintiff's friend Rachel Thomas wrote a letter in support of plaintiff's disability application. Tr. 232-33. Ms. Thomas wrote that she has known plaintiff for over 37 years, and described her as "highly dependent and restricted mentally and physically." Tr. 232. Ms. Thomas wrote that plaintiff has panic attacks and is no longer able to enjoy her previous activities. Tr. 233.

The record also contains an undated letter from plaintiff's husband, Richard Hicks, describing plaintiff's symptoms and limitations. Tr. 234. Mr. Hicks wrote that plaintiff could not use her wrists and that standing up causes pain in her feet. Id. He stated that pain interferes with plaintiff's sleep, and that he has witnessed her panic attacks and physical symptoms from social anxiety. Id.

The Commissioner concedes that the ALJ's failure to discuss the lay testimony was error. Def.'s Br. 14-15. After a careful review of the record, the Court finds that such error was harmless. In the Ninth Circuit, an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims. See Molina, 674 F.3d at 1122. Here, both lay witnesses described essentially the same limitations that plaintiff described in her testimony. As discussed above, the ALJ properly rejected plaintiff's testimony regarding her symptoms and limitations. The evidence that the ALJ referred to in rejecting plaintiff's statements therefore also discredits the lay witness statements. Thus, because the ALJ properly found that plaintiff was not credible in her testimony, the ALJ did not commit reversible error when rejecting the lay testimony of Ms. Thomas and Mr. Hicks. Molina, 674 F.3d at 1122; see also Lewis, 236 F.3d at 512.

///

15 - OPINION & ORDER

IV.     The ALJ's Reliance on the VE Testimony

Plaintiff argues, finally, that the ALJ submitted a deficient hypothetical to the VE that did not include all of plaintiff's limitations.  Plaintiff contends that the ALJ thus erred at step five because he relied upon VE testimony that was based on a deficient hypothetical.  Because the ALJ did not err in his evaluation of the evidence, however, the hypothetical submitted to the VE included all of plaintiff's limitations.  The ALJ was therefore entitled to rely upon the VE's testimony in formulating his decision that plaintiff is not disabled.  Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (where the hypothetical posed to the VE includes all of a claimant's credible limitations, the ALJ may reasonably rely upon the VE's testimony).  The ALJ's opinion is affirmed.

CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this ____18____ day of ____Dec.____, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge